JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

CHINHAYI J. COLEMAN (CABN 194542)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, CA 94612
   Telephone: (510) 637-3924
   Facsimile: (501) 637-3724
   E-Mail: chinhayi.j.coleman@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>       Plaintiff, )<br>   v. )<br>MARVIN NELSON, )<br>       Defendant. ) | No. CR 07-00364 CW<br><br>U.S. SENTENCING MEMORANDUM<br><br>Date: July 9, 2008<br>Time: 2:30 p.m.<br>Judge: Honorable Claudia Wilken |

U.S. SENTENCING MEMORANDUM
CR 07-00364 CW

## INTRODUCTION

### A. Indictment

On June 7, 2007, a federal grand jury indicted defendant Marvin Nelson ("the defendant") for theft of money of the United States in violation of 18 U.S.C. § 641. The defendant's mother died on February 2, 1989. At the time of his mother's death, his mother was receiving a monthly benefit payment from the Railroad Retirement Board. The indictment arose out of the defendant's conduct from 1989 through 2007, during which he knowingly cashed benefit checks by the United States Railroad Retirement Board payable to his mother. On or about June 21, 1989, the defendant opened a joint checking account in his deceased mother's name at Bank of America. From February 1989 through on or about January 11, 2007, the defendant continued to sign his mother's signature on the United States Railroad Retirement Board benefit checks, deposited them into the joint bank account, and converted them to his use. By this continuing course of conduct, the defendant converted to his use approximately $132,968.68 in United States Railroad Retirement Board benefits.

### B. Defendant's Guilty Plea

On December 18, 2007, the defendant pled guilty to the one-count captioned indictment charging him with theft of money of the United States in violation of 18 U.S.C. § 641. The defendant and the government entered into a plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure.

In Paragraph 2 of the plea agreement, the defendant admitted that, he stole and converted his mother's monthly benefit payments to his own use, by fraudulently endorsing his mother's name on the back of his mother's monthly benefit checks, opening a joint checking account in her name after she died, and cashing his mother's checks after she died. He further agreed that the total amount of funds belonging to the United States that he converted to his use during the period between 1989 through 2007 was approximately $132,968.68.

## II. SENTENCING GUIDELINES CALCULATIONS

The United States Probation Office ("USPO") has calculated Defendant's Total Offense Level as 13 and his Criminal History Category as II, with a resulting sentencing range of 15 to 21 months. (PSR[1], ¶ 56) The USPO notes that because the Guideline range falls within Zone D of the Sentencing Table, the minimum term must be satisfied by a term of imprisonment. (PSR, ¶ 56) Thus, the most appropriate sentence under the Guidelines is a sentence of 15 months imprisonment, 3 years of supervised release, $132,968.68 in restitution, and a $100 special assessment.

Given the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, provide just punishment, to afford adequate deterrence, and the need to avoid sentencing disparities, a sentence below the Guidelines is not appropriate.

### A. A Departure for Mental and Emotional Conditions or Diminished Capacity Is Not Appropriate

Sentencing Guidelines Section 5H1.3 states that mental and emotional conditions are not relevant in determining whether a departure is warranted, except as provided in Section 5K2. See United States v. Doering, 909 F.2d 392, 394 (9th Cir. 1990). Section 5K2.13 sets out five requirements for a departure for diminished capacity. The defendant must have (1) committed a non-violent offense; (2) while suffering from significantly reduced mental capacity; (3) not caused by voluntary use of drugs or other intoxicants; (4) the reduced capacity must contribute to the commission of the offense, and (5) the defendant's criminal history must not indicate a need for incarceration to protect the public. See United States v. Smith, 330 F.3d 1209 (9th Cir. 2003); United States v. Davis, 264 F.3d 813 (9th Cir. 2001).

---

[1] The term "PSR" refers to the Presentence Investigation Report prepared by U.S. Probation and disclosed on June 5, 2008.

U.S. SENTENCING MEMORANDUM
CR 07-00364 CW                            2

### 1. The Defendant Did Not Have a Significantly Reduced Mental Capacity

The Guidelines define a significantly reduced mental capacity as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." See Application Note 1 to § 5K2.13. In the present case, the report by Dr. Eliason establishes that no impairment prevented the defendant from understanding the wrongfulness of his behavior or from controlling his behavior. See Eliason Report[2], p. 5. Indeed, the medical report specifically states that regarding the instant offense, the defendant "knew that what he was doing was illegal." See Eliason Report, p. 5.

The medical report by Dr. Eliason establishes that the defendant does not merit a diagnosis of Posttraumatic Stress Disorder. See Eliason Report, p. 1. A downward departure in the present case based upon the defendant's depression and drug use is not appropriate, just as no departure was appropriate for an alleged partial diminished capacity due to depression and alcohol abuse in United States v. Borrayo, 898 F.2d 91 (9th Cir. 1990).

Section 5K2.13 concerns the affect of the impairment on the defendant, not the characteristics or the seriousness of the impairment itself. See United States v. Cantu, 12 F.3d 1506, 1513 (9th Cir. 1993). The medical report in the present case establishes that the depression that the defendant experienced did not cause him to commit the crime at issue. See Eliason Report, p. 2. As the depression experienced by the defendant did not affect him in a way that caused the present offense, a reduction on the basis of diminished capacity is not appropriate.

### 2. The Defendant's Impairment Was Caused by Voluntary Use of Drugs

In the present case, the defendant's mental condition was caused by the voluntary use of drugs. Section 5K2.13 limits the application of a diminished capacity argument in that the impairment may not have been caused by voluntary use of drugs. See U.S.S.G. § 5K1.13; United

---

[2] "Eliason Report" refers to the report by Scott Eliason, M.D., of the Psychiatry and the Law Program of the University of California San Francisco, and dated March 25, 2008. The report is filed under seal concurrently with the present Sentencing Memorandum.

States v. Smith, 330 F.3d at 1209; United States v. Davis, 264 F.3d at 813; United States v. Borrayo, 898 F.2d at 91. That limitation comports with U.S.S.G. § 5H1.4, which states "drug or alcohol dependence or abuse is not a reason for imposing a sentence below the Guidelines. Substance abuse is highly correlated to an increased propensity to commit crime." (U.S.S.G. § 5H1.4) The doctor's evaluation in the present case opines that the defendant "has ongoing substance abuse problems that may be the cause of, or a significant contributing factor to, his depression." See Eliason Report, p. 1. Dr. Eliason also found that the defendant's "substance use is likely a significant contributor to his current psychiatric condition." See Eliason Report, p. 2. As the defendant's alleged depressive disorder is likely caused by his drug abuse, a departure on the basis of diminished capacity is not appropriate.

### 3. The Defendant's Impairment Did Not Contribute to His Commission of the Offense

In order to qualify for a departure for diminished capacity, the defendant's reduced capacity must contribute to the commission of the offense. See U.S.S.G. § 5K1.13; United States v. Smith, 330 F.3d at 1209; United States v. Davis, 264 F.3d at 813; United States v. Borrayo, 898 F.2d at 91. In the present case, the defendant's alleged medical problems did not contribute to the commission of the offense. Indeed, Dr. Eliason's report specifically states that it is more likely that the defendant committed the instant crime for reasons unrelated to his childhood abuse or his ambivalent relationship with his mother. See Eliason Report, p. 2.

### 4. The Defendant's Criminal History Indicates a Need for Incarceration to Protect the Public

In order to qualify for a departure for diminished capacity, the defendant must not have a criminal history indicating a need to protect the public. See U.S.S.G. § 5K1.13; United States v. Smith, 330 F.3d at 1209; United States v. Davis, 264 F.3d at 813; United States v. Borrayo, 898 F.2d at 91. In the present case, the defendant's criminal history indicates a need for incarceration to protect the public. The defendant has 2 prior convictions for fraud and theft, for which he received a term of probation and a $200 fine, respectively. While on supervision for the fraud case, the defendant commenced the present criminal activity. As the defendant has not been

U.S. SENTENCING MEMORANDUM
CR 07-00364 CW                                    4

deterred from criminal fraud and theft by means of a prior probation term and a prior fine, the defendant's incarceration is needed to protect the public from his fraud and theft.

### B.  A Departure for Lack of Youthful Guidance Is Not Appropriate

Section 5H1.12 states that "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted." Consequently, the matters raised concerning the defendant's childhood issues do not bear upon the appropriateness of his sentence for committing the crime at issue. This is especially true in the present case, in which a physician has specifically determined that the criminal activity in the present case is unrelated to the defendant's childhood abuse or his ambivalent relationship with his mother. See Eliason Report, p. 2.

### C.  A Departure for Extraordinary Acceptance of Responsibility is Not Appropriate

A downward departure on the grounds of unusual or extraordinary acceptance of responsibility is discouraged, and would not be appropriate in the present case. Application Note 1(c) to Section 3E1.1 lists voluntary restitution prior to adjudication of guilt as an independent reason for the two-level reduction for acceptance of responsibility, which the defendant has already received in the present case. A defendant may be eligible for the reduction for acceptance of responsibility under Section 3E1.1, but restitution is generally not a legitimate ground for departure from the Guideline sentencing range. See United States v. Chastain, 84 F.3d 321 (9th Cir. 1996).

The loss amount for purposes of the Sentencing Guidelines and for restitution are based upon the amount of loss that the defendant actually caused. See United States v. Bussell, 504 F.3d 956 (9th Cir. 2007). Although the defendant in the present case agrees to liquidate a 401(k) account to pay for a portion of the loss amount, there is nothing extraordinary about a defendant's restitution when he is required to liquidate assets acquired during criminal activity. See United States v. Ekeland, 174 F.3d 902 (7th Cir. 1999). In the present case, the defendant has

U.S. SENTENCING MEMORANDUM
CR 07-00364 CW                              5

agreed to pay back the amount that he benefitted from his 18 years of fraud – i.e., the $132,968.68 that he converted to his use. To date, he has paid $23,000 toward that debt in the government's knowledge.

The defense has relied upon United States v. Kim, 364 F.3d 1235 (11th Cir. 2004), for the proposition that extraordinary attempts to pay restitution may be a ground for a below Guidelines sentence. As a preliminary matter, it should be noted that the Kim case specifically found that departure of the ground of extraordinary acceptance of responsibility is "discouraged." See Kim, 364 F.3d at 1244. Furthermore, the Kim case is distinguishable from the present case on the facts. Although the Kim defendants personally benefitted from only two thirds of the loss caused by their illegal activities, they traveled to South Korea to secure loans, and they paid back the entire loss amount (which included money that they never personally received).

Similarly, United States v. Miller, 991 F.2d 552 (9th Cir. 1993), is distinguishable from the present case because the defendant in that case paid more than the amount for which she was responsible. In Miller, the defendant and two other people embezzled $45,000, but although the plea agreement required her to pay only $18,000 in restitution, she paid $58,000 – substantially more than the amount for which she was responsible. Miller, 991 F.2d at 553. In the present case, however, the defendant has agreed to pay back the amount that he benefitted from his 18 years of fraud – i.e., the $132,968.68 that he converted to his use.

The Court's discretion in departing downward because of restitution is constrained in three ways. Miller, 991 F.2d at 553. First, the departure must be consistent with the view of the Sentencing Commission that restitution is relevant to the extent it shows acceptance of responsibility. Second, the Court may depart only if acceptance of responsibility is substantially greater than that contemplated by the Commission when drafting the sentencing guidelines section governing acceptance of responsibility. Third, the magnitude of the departure must be commensurate with the level of the defendant's acceptance of responsibility. Id. At 553. In the present case, the defendant's restitution is relevant only to the extent that it shows his acceptance of responsibility, as his agreement to pay restitution for the amount that he benefitted from his 18 years of fraud is not greater than that contemplated by the Commission when drafting the

Sentencing Guidelines.

## III. STATUTORY SENTENCING FACTORS

### A. The Sentencing Guidelines Post-*Booker*

Under the Sentencing Reform Act as modified by United States v. Booker, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases. Booker, 543 U.S. at 259 (noting that the Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); see also United States v. Cantrell, 433 F.3d 1296, 1279 (9th Cir. 2006)(noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory"). This Court, having calculated the guideline range, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for Defendant.

### B. Consideration of the 3553 Factors

#### 1. The History and Characteristics of the Defendant Call for a 15-Month Sentence

Defendant's personal history and characteristics demonstrate the need for a sentence within the applicable Guideline range. The defendant's background shows a history of theft and fraud beyond that at issue in the present case. The defendant was convicted of interstate credit card fraud in 1986. (PSR ¶ 29) The defendant was convicted of theft in 2005. (PSR ¶ 30) Indeed, the defendant's conduct in the present case commenced while he was on supervision for his 1986 interstate credit card fraud conviction. (PSR, ¶ 33)

The 3553 factor of deterrence would not be satisfied with a below Guideline sentence in the present case. The defendant has two prior convictions involving theft – one for interstate credit card fraud and one for theft. He received probation for one offense and a modest fine for another offense. Despite being sentenced to probation for a previous felony of fraud, the defendant persisted in his fraudulent criminal activity. Indeed, he commenced the fraud in the present action while he was under supervision for his prior fraud conviction. (PSR, ¶ 33) The

defendant has a pattern of theft behavior, and his record demonstrates that probation does not deter him from committing fraudulent behavior. The defendant has received probation and a fine in the past, which have not prevented his recidivism. (PSR, ¶ 29) A sentence of imprisonment is necessary in this case to provide the defendant with deterrence and to promote respect for the law.

### 2. The Nature and Circumstances of the Present Offense Call for a 15-Month Sentence

The nature and circumstances of the present offense demonstrate the need for a sentence within the Guideline range, because this is a serious offense where the defendant stole over $130,000. A sentence below the Guideline range would not address the 3553 factors of deterrence, the need to reflect the seriousness of the crime, to promote respect for the law, or to provide just punishment. A sentence below the Guidelines would also fail to avoid disparities in sentencing for theft of such a large amount of money.

The amount of time that the defendant spent committing the instant offense demonstrates the need for a sentence within the Guideline range. For an eighteen year period (1989 through 2007), the defendant converted to his use approximately $132,968.68 in United States Railroad Retirement Board benefits. A sentence below the Guidelines for an offense of such an extended duration would not reflect the seriousness of the crime, would not promote respect for the law, and would not provide just punishment.

The defendant's untruthful statements to authorities demonstrate the need for a sentence within the Guideline range. When the case agents visited the last address of record for the deceased Betty Nelson on January 29, 2007, the defendant greeted them. PSR, ¶ 7. The defendant identified himself to the agents as Ms. Nelson's son. PSR, ¶ 7. Although Ms. Nelson had been dead for almost 18 years, the defendant told the agents that his mother was living nomadically in Arizona shelters, and that she contacted him once per month to tell him where to send her retirement check. PSR, ¶ 7. After this initial meeting, the defendant left two telephone voice messages for the agents, in which he described having difficulty dealing with his mother. PSR, ¶ 9. On June 5, 2007, the agents interviewed the defendant at his home in Castro Valley.

During the June 5, 2007 meeting, the defendant told the agents that he spoke with his mother two weeks after the agents first contacted him in January 2007. PSR, ¶ 9. He told the agents that he was the only person in his family who maintained contact with his mother, who lived in homeless shelters. PSR, ¶ 9. He finally admitted that his mother was dead when the agents confronted him with her death certificate. PSR, ¶ 10. A sentence below the Guidelines for an offense involving untruthful statements to law enforcement officials would not reflect the seriousness of the crime, would not promote respect for the law, and would not provide just punishment.

### 3. The Defendant's Mental Health and Childhood Abuse Issues Are Not Mitigating, As They Did Not Give Rise to the Present Offense Conduct

The defendant's alleged mental health issues are not a mitigating factor. Although the defendant is opined to have a non-specified depressive disorder, the medical review reveals that his mental state did not cause his criminal activity. As discussed more fully above, the expert medical review in the present case reveals that the defendant more likely committed this crime for reasons unrelated to his mental state or his relationship with his mother. See Eliason Report, p. 2.

### C. Community or Home Confinement Are Not Appropriate

The defendant's Guideline range is within Zone D of the Sentencing Table. If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment. U.S.S.G. §5C1.1(f); see also United States v. Malley, 307 F.3d 1032, 1034-1035 (9th Cir. 2002). The minimum term must be satisfied by a sentence of imprisonment without the use of any imprisonment substitutes. U.S.S.G. §5C1.1 Application Note 8.

Detention at a community center, where a defendant is not subject to te control of the Bureau of Prisons, is not "imprisonment" within the meaning of federal law. See Reno v. Koray, 515 U.S. 50, 59 (1995); see also United States v. Sullivan, 504 F.3d 969 (9th Cir. 2007). Based on the plain language and structure of the United States Sentencing Guidelines, confinement in a

U.S. SENTENCING MEMORANDUM
CR 07-00364 CW                                9

community center is not "incarceration" or "imprisonment." See United States v. Latimer, 991 F.2d 1509 (9th Cir. 1993).

Defendant's Total Offense Level is 13, his Criminal History Category is II, and his resulting sentencing range is 15 to 21 months, which falls within Zone D of the Sentencing Table. (PSR, ¶ 56) Consequently, the government requests that the defendant be committed to the custody of the Bureau of Prisons for a 15 month term of imprisonment.

## IV.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the Sentencing Guidelines and the sentencing factors set forth in Section 3553(a), sentence Defendant to 15 months imprisonment, 3 years of supervised release, $132,968.68 in restitution, and a $100 special assessment.

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: July 2, 2008

CHINHAYI J. COLEMAN
Assistant United States Attorney