BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
555 12th Street   Suite # 650
Oakland, CA 94607-3627
Telephone: (510) 637-3500

Counsel for Defendant NELSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. CR 07-00364 CW |
| Plaintiff, ) | |
| ) | DEFENDANT'S SENTENCING |
| v. ) | MEMORANDUM |
| ) | |
| MARVIN NELSON, ) | Date: July 9, 2008 |
| ) | Time: 2:30 p.m. |
| Defendant. ) | |
| ) | |

**INTRODUCTION**

On December 18, 2007, defendant Marvin Nelson pled guilty to a one count indictment which charges him with a violation of 18 USC §641 - theft of government property.  Mr. Nelson will be sentenced by this Court on July 9, 2008.  A presentence report ("PSR") was prepared by United States Probation Officer Christina Carrubba who calculates the advisory guideline range in this case to be 15-21 months.  PSR ¶56.  She recommends that the Court sentence Mr. Nelson to a below-guideline sentence of five years probation with a condition of probation that Mr. Nelson serve 7 months in community confinement and 8 months in home confinement.  PSR, Sentencing Recommendation.  Mr. Nelson agrees that a sentence of probation rather than imprisonment is appropriate in this case.  However, he asks the Court to consider sentencing Marvin to a term of

probation which includes 15 months in home confinement, rather than a split sentence of 7 months in a half-way house and 8 months in home confinement. Such a sentence is "sufficient, but not greater than necessary" to address the 18 U.S.C. §3553 factors which would encompass the extraordinary abuse which Mr. Nelson suffered at the hands of his mentally ill mother, as well as his own diminished capacity, including severe depression, post-traumatic stress disorder and intermittent suicidal ideation. Mr. Nelson submits this sentencing memorandum in support of his request.

Attached as exhibits are: (1) medical records from John Peter Smith Hospital in Fort Worth, Texas dated 1979-80 relating to Betty Nelson (Exhibit A); (2) medical records from Mental Health Mental Retardation of Tarrant County facility in Fort Worth, Texas dated 1977-81 relating to Betty Nelson (Exhibit B); (3) medical records from David Louis M.D. in Oakland, California from 2002 relating to Marvin Nelson (Exhibit C)  (4) medical records from Berkeley Therapy Institute in Berkeley, California dated 2005 relating to Marvin Nelson (Exhibit D); (5) medical records from South County Crisis Center in San Leandro, California dated 2005 relating to Marvin Nelson (Exhibit E); (6) medical records from Tri-City Health Center in Fremont, California from 2006 relating to Marvin Nelson (Exhibit F); (7) letter dated July 3, 2008 from East Bay Community Recovery Project (Exhibit G); and (8) letter dated July 2, 2008 from Christopher Bolo (Exhibit H).

## BACKGROUND

### A.  Offense Conduct

Defendant Marvin Nelson committed theft of government property when he received benefit checks from the United States Railroad Retirement Board which were payable to his mother Betty B. Nelson and continued to cash them after her death in 1989. Plea Agreement ¶2.

### B.  Personal Background

#### (1) Betty's Mental Illness and Extraordinary Abuse of Marvin

Marvin Nelson is a 48 year old white man who was born in Fort Worth, Texas, and raised by mentally ill parents. *Id*. at ¶¶37, 38. Marvin's father, who was a veteran of the Korean war, often

talked to himself as if others were present and was diagnosed with schizophrenia. *Id*. at ¶37. This information was confirmed by Marvin, and his sister Roxanne Rogers.[1] Marvin's father was mentally ill but apparently not violent. In contrast, Marvin's mother was both mental ill and extremely violent.

Marvin described, and his sister confirmed, a childhood in which Marvin was beaten regularly. In fact, Betty Nelson freely admitted during one of her many visits to a mental health hospital that she regularly beat Marvin with a board. *See* Exhibit B at bate BN000039. Furthermore, Betty Nelson shot at Marvin when he was just eight years old, another fact which is corroborated by police officers when they interview neighbors in connection with another one of Betty's commitments to a mental health facility. PSR ¶38; Exhibit A at bate JPS000857. Not only did Betty beat her son and shoot at him, but she also doused him with lighter fluid and set him on fire when he was a child. PSR ¶38. Furthermore, Betty would punish Marvin if he did not finish the food on his plate, by setting it aside for a week or more and then forcing him to eat it only after it became rotten, moldy and rat-infested. Marvin discussed this during the pre-sentence interview and it was confirmed by his sister.[2] PSR ¶38.

Betty Nelson was so crazy and violent that she should have been institutionalized on a long term basis. However, Marvin did not want to see her institutionalized and so he dropped out of high school at age 16 or 17 years old, to become her primary caretaker. PSR ¶46. Meanwhile, neither Roxanne, nor any other relatives had a desire to care for Betty, and Marvin was left alone with her.

Betty's extreme mental illness is described in the few remaining records. For example,

---

[1] Undersigned counsel spoke with defendant's sister, Roxanne Rogers regarding the family history and is supplementing this section with information provided by Ms. Rogers. Should the Court desire, counsel could submit a declaration to confirm that the information being attributed to Ms. Rogers was provided to undersigned counsel by Ms. Rogers during a telephone conversation on October 22, 2007.

[2] Finally, Roxanne also told undersigned counsel that she had also been sexually molested by both parents when she was 6 or 7 years old, and that she believed that Marvin had been molested as well. However, when she asked Marvin about it, he told her that things at the house after she moved out were too awful to describe and he refused to provide details telling her that he thought it would only make her hate the parents even more.

mental health reports from the late 1970's describe Betty Nelson as suffering from schizoaffective disorder with psychosis.  Exhibit A at bate JPS 000034.  Mental health records describe the fact that the parents "had never gotten along . . .even to the point of shooting at each other." *Id*. at JPS000053.  The records further reflect that Betty Nelson prayed that her husband would die and after he did, she began to believe that she had a direct line to God.  *Id*.  When Betty Nelson was brought back to John Peter Smith mental hospital in Fort Worth Texas, in 1979, there were references to the fact that Betty was "acting the same now as before only much worse" and that her behavior included eating dirt, cutting and burning her hair, burning other objects and stating that god was talking to her *Id*. at JPS JPS000034 and 856.  She also believed that her daughter was "Satan's Daughter."  Exhibit B at bate BN000005.

Betty Nelson's mental illness had a profound affect on Marvin.  Marvin spent most of his life until age 29, either being abused by his mother with no escape as a child, or caring for her despite her crazy and violent behavior alone and with no escape as an adult.  He suffered greatly as a result.

### (2) Marvin's Resulting Depression and Diminished Capacity

Not surprisingly, Marvin himself, suffers from mental illness including recurrent major depression and post-traumatic stress disorder.  *See* Exhibits E ("recurring major depression" at bates SC000002 - 3 and ideation of jumping in front of BART at bate SC000005), F (Zoloft and Wellbuterin prescribed for depression at bate TC000020021), and G ("Mr. Nelson has been diagnosed by Dr. Cohn with Recurrent Major Depression and Post Traumatic Stress Disorder").  In 2002, Marvin filled out a self-evaluation while seeing Dr. Davis Louis where he described himself as "sad all the time," not "expect[ing] things to work out" for him and blaming himself "for everything bad that happens." Exhibit C at DL000034.

In 2005, he was diagnosed with Bi-Polar Disorder and severe depression.  PSR ¶43.  Again in 2006 he was diagnosed with severe depression and as recently as May, 2008, Mr. Nelson has been diagnosed with Recurrent Major Depression and Post Traumatic Stress Disorder at East Bay Community Recovery Project, where he was sent by pretrial services.  Exhibit F at bate TC0000020;

Exhibit G.  The records attached make it clear that Marvin Nelson still suffers the effects of the abuse which he experienced at the hands of his mother (and perhaps father), and his resulting mental health bears that out.  Under 18 U.S.C. §3553, this is relevant information for the Court to consider as it decides the appropriate sentence.

## DISCUSSION

**A Sentence of Probation which Includes Home Detention is Sufficient, But Not Greater Than Necessary, to Satisfy the Goals of Sentencing**

The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), have dramatically altered the district court's role in sentencing.  Taken together, the cases make it clear that district court judges now have the ability, as well as the duty, to exercise their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."   Section 3553(a)(2) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  Moreover, district courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," the kinds of sentences available, the policies of the Sentencing Commission, the guidelines, the need to avoid unwarranted sentence disparities, and the need to provide restitution to any victims. 18 U.S.C. §3553(a)(1) - (7); *see also*, *e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (describing the "overarching statutory charge for a district court").

Of course, even before the Supreme Court's decision in *Booker* rendered the Sentencing Guidelines advisory, district courts had some authority to depart from the Guidelines.  *See generally*

*U.S. v. Marvin Nelson*, CR 07-00364 CW;            - 5 -
Sentencing Memo

USSG § 5K (enumerating grounds for departure).

In *Booker*, the Supreme Court held that the mandatory nature of the Sentencing Reform Act of 1984 violated the Sixth Amendment right to a jury trial. *See Booker*, 543 U.S. at 264. "To remedy the constitutional infirmity, the Court severed the mandatory portions of the Act, rendering its sentencing provisions, including the Sentencing Guidelines, effectively advisory." *United States v. Ameline*, 409 F.3d 1073, 1074 (9th Cir. 2005) (en banc). The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564. While "district courts still 'must consult [the] Guidelines and take them into account when sentencing,'" *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker*, 543 U.S. at 264), the district courts "may not presume that the Guidelines range is reasonable," *Gall*, 128 S.Ct. at 596-97 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)). And, as the Court's subsequent decisions in *Gall* and *Kimbrough* demonstrate, *Booker*'s consultation requirement is not intended to limit the district court's sentencing discretion.

The Court in *Gall* emphasized the importance of deferring to the judgment of the sentencing courts, explaining:

> The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.

*Id*. at 597-98 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2469 (2007)).

Further, while the Guidelines are to be accorded "respectful[] consideration," no factor, including the Guidelines, "should be given more or less weight" than any other factor. *Id.* Moreover, the sentence must be based on "an individualized determination based on the facts." *Id.* The primary directive in §3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. *See* 18 U.S.C. §3553(a).

In this case, a term of probation with 15 months in home detention is sufficient to meet the purposes of sentencing. Some of the factors which the Court should consider are discussed below.

**1. Nature and Circumstances of the Offense**

Under 18 U.S.C. §3553(a), the Court should consider the nature and circumstances of the offense in determining an appropriate sentence. This case involves theft of government funds from the Railroad Retirement Board. The money was intended for Mr. Nelson's mother, Betty, who died in 1989. The offense is primarily one of omission. It is true that Marvin took certain affirmative steps to prevent discovery such as opening a joint bank account, continuing to sign his mother's name to the back of the check as he had done when she was alive, and initially lying to the agents when they first questioned him. However, the offense is a fairly passive crime which did not involve Marvin doing anything to commit the offense other than continuing to spend money which was sent by the federal government for the benefit of his mother.

The offense is aggravated by the fact that Marvin did not notify the Railroad Retirement fund and they continued to pay him over 17 years. But this was partly due to the fact that Marvin was afraid of getting in trouble. As a child, if Marvin committed some perceived wrong, the punishment was always extreme (i.e. being beaten with a board, forced to eat rancid food, shot at, or set on fire). Thus, it is understandable that once he recognized that he was not entitled to keep the money, his fear of getting in trouble in this case caused him to let the offense continue without notifying the authorities. On balance, this is not the kind of offense which should lead to a sentence of imprisonment. Rather, probation with restrictions on Mr. Nelson's liberty in the form of home detention is appropriate.

**2. The History and Characteristics of Marvin Nelson**

Under 18 USC §3553(a), the history and characteristics of Marvin Nelson is a separate factor for the Court to consider in fashioning a fair and just sentence. Even when the guidelines were mandatory, district courts recognized that an individual could be sentenced below the guideline range based upon childhood abuse. *See, e.g. United States v. Walter*, 256 F.3d 891 (9th Cir. 2001)(court departed from 41 months because it determined that childhood abuse constituted the type of extraordinary circumstances justifying consideration); *United States v. Roe*, 976 F.2d 1216 (9th Cir.

1992)(court clearly erred in holding it did not have discretion to depart downward where defendant suffered extraordinary abuse as a child); *United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 81, 84 ("It seems beyond question that abuse suffered during childhood - at some level of severity - can impair a person's mental and emotional condition").

Furthermore, a defendant also could be sentenced below the guidelines if the individual suffered from diminished capacity, including depression and post traumatic stress disorder. *See, e.g.* *United States v. Menyweather*, 431 F.3d 692, 698 (9th Cir. 2005)(in embezzlement case, district court departed eight levels to probation based in part on post traumatic stress syndrome); *United States v. Cantu*, 12 F.3d 1506, 1512, 1516 (9th Cir. 1993)(criminal justice system long has meted out lower sentences to persons who although not technically insane are not in full command of their actions.); *United States v. Lewinson*, 988 F.2d 1005 (9th Cir. 1993)(four level departure where defendant suffered from depression even though mental disease not severe and did not affect defendant's ability to perceive reality); *Caro v. Woodford*, 280 F.3d 1247, 1258 (9th Cir. 2002)(more than any other singular factor, mental defects have been respected as a reason for leniency).

Contrary to the government's argument in its sentencing memorandum, the Court need not find that the mitigating circumstances amount to a "departure" before it can sentence Mr. Nelson below the guideline range. Rather, the Court is to make "an individualized determination based upon the facts" under the factors set out in 18 U.S.C. §3553. Such a determination is consistent with the law and justifies a sentence of probation in this case. After *Booker*, 543 U.S. 220 (2005), *Kimbrough*, 128 S.Ct. 558 (2007), and *Gall*, 128 S.Ct. 586 (2007), the guidelines are just a starting point and one factor to be considered along with many.

Here, Marvin Nelson suffered extraordinary abuse, and that abuse has been documented. Moreover, he suffers from recurrent major depression and other mental health issues which have been diagnosed by a number of different doctors including Dr. Scott Eliason, who was retained by the probation officer in this case, as well as Dr. David Cohn, who is affiliated with the pretrial services officer. *See* PSR ¶44; Exhibit G. The extraordinary abuse and diminished capacity are mitigating

factors which the Court should consider. Given all of the circumstances, a sentence of probation with home detention is adequate.

**3. A sentence of probation and home detention is sufficient to show respect for the law, just punishment and adequate deterrence and no greater sentence is needed either to protect the public or for training**

18 U.S.C. §3553 provides that the Court shall consider the need for a sentence to promote respect for the law, provide just punishment for the offense and afford adequate deterrence to criminal conduct. 18 U.S.C. §3553(a)(2)(A) and (B). Furthermore, the Court is required to consider the need to provide a defendant with needed educational or vocational training or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a)(2)(D). All of these factors support a sentence of probation and home detention.

Marvin already has respect for the law, as is shown by his many years of primarily law-abiding behavior. A review of his criminal history, with the only criminal history points resulting from an offense which occurred almost 22 years ago, shows that Marvin has respect for the law.

In addition, the proposed sentence also provides just punishment as Marvin has been convicted of a felony and, even if he receives a sentence of probation with home detention, his freedom is still being severely restricted. Given his mental status, such a sentence would serve as just punishment. Finally, the proposed sentence also provides adequate deterrence. He is getting the counseling he needs to assure that he will not commit crimes in the future.

The probation officer who wrote the PSR recognizes that custody is not warranted and may be detrimental:

> a sentence with an element of confinement, not involving imprisonment, is a significant form of punishment . . . placing him in prison might cause further harm to the defendant's mental state than necessary.

PSR, Sentencing Recommendation. Moreover, Mr. Nelson's current therapist confirms that incarceration would be cause injury to him:

> I have no doubt that any length of incarceration would be harmful to Mr. Nelson's mental health and emotional well-being and I strongly

recommend continued mental health treatment.

Exhibit G.

Given the therapist's comments, it is clear that a sentence of probation and home detention would further the sentencing factor of providing a defendant with any "needed educational, vocational or other correctional treatment" in "the most effective manner."  Exhibit G; *See also* 18 U.S.C. §3553(a)(2)(D).

**4. Most Effective Way to Pay Restitution to Victims**

18 U.S.C. §3553(a)(7) provides that the court shall consider the need to provide restitution to any victims of the offense.  In this case, Mr. Nelson will better be able to pay restitution to the government if he is allowed to remain out of custody and find a job with the probation office's assistance.  Mr. Nelson has already paid $51,000 towards restitution which represents the money he was able to liquify from a 401K as adjusted because of the down market.  He would like to pay off the restitution as quickly as possible and make the victim Railroad Retirement Board whole. Restitution is a factor for the Court to consider under 18 U.S.C. §3553(a)(7).  This factor weighs in favor of the sentence requested.

**CONCLUSION**

For all of the reasons described above, Marvin Nelson respectfully urges the Court to sentence him to a term of five years probation with a condition that he serve 15 months in home detention.

Dated: July 7, 2008

                                                Respectfully submitted,

                                                BARRY J. PORTMAN
Federal Public Defender

                                                    /S/

                                              JOYCE LEAVITT
Assistant Federal Public Defender

*U.S. v. Marvin Nelson*, CR 07-00364 CW;  - 10 -
Sentencing Memo