JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

CHINHAYI J. COLEMAN (CABN 194542)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, CA 94612
   Telephone: (510) 637-3924
   Facsimile: (501) 637-3724
   E-Mail: chinhayi.j.coleman@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>      Plaintiff,   )<br>                       )<br>  v.   )<br>                       )<br>MARVIN NELSON,   )<br>      Defendant.   )<br>_____) | No. CR 07-00364 CW<br><br>SUPPLEMENTAL SENTENCING MEMORANDUM<br><br>Date: July 9, 2008<br>Time: 2:30 p.m.<br>Judge: Honorable Claudia Wilken |

SUPPLEMENTAL SENTENCING MEMORANDUM
CR 07-00364 CW

## I. INTRODUCTION

The government filed its Sentencing Memorandum on July 2, 2008, and the defense filed its Sentencing Memorandum on July 7, 2008. The following Supplemental Sentencing Memorandum by the government responds to some of the issues raised by the defendant's memorandum.

## II. DISCUSSION

### A. The Defendant's Actions Were Not Passive

The government disagrees with the characterization of the defendant's crime as passive. The indictment in this case arose out of the defendant's conduct over an 18 year period, during which he knowingly converted to his use approximately $132,968.68 in federal benefits payable to his mother. The defendant's conduct involved several active aspects. After his mother died, the defendant opened a joint checking account in his deceased mother's name, using her social security number. Month after month, from February 1989 through January 2007, the defendant forged his mother's signature on the benefit checks, deposited them into the joint bank account he had fraudulently opened, and used the money. The defendant changed the address for his deceased mother 3 times over the course of this continuing fraudulent scheme to correspond with his own personal address changes.

### B. A Departure for Childhood Abuse or Diminished Capacity Is Not Appropriate

The cases that the defendant cites in support of his request for an adjustment for childhood abuse and diminished capacity all involve situations in which the abuse or diminished capacity caused the offense behavior. The defendant relies upon United States v. Cantu, 12 F.3d 1506 (9th Cir. 1993), in which a defendant's post traumatic stress disorder following his experience as a Vietnam veteran caused him to fixate on weapons and to engage in the offense conduct of his felon in possession case. The defendant also relies upon United States v. Lewinson, 988 F.2d 1005 (9th Cir. 1993), in which there was clear and uncontroverted evidence

SUPPLEMENTAL SENTENCING MEMORANDUM
CR 07-00364 CW                        1

that the defendant suffered from an impaired mental capacity at the time of the offense. In Lewinson, the medical reports established that Lewinson's "conduct at the time of the offenses was directly related to psychological problems," and that Lewinson's psychological problems were the "most highly significant factors in [Lewinson's] behavior and decision-making during the offense period." Lewinson, 988 F.2d at 1006.

The defendant also cites Caro v. Woodford, 280 F.3d 1247 (9th Cir. 2002), which involved a murder defendant who, according to medical experts, suffered chemical brain damage that caused him to have irrational aggressiveness. Similarly, in United States v. Menyweather, 447 F.3d 625 (9th Cir. 2006), a forensic psychologist opined that the defendant's theft offense was part of a "manic denial of psychotic trauma accompanied by compulsive coping behaviors." Menyweather, 447 F.3d at 628. In United States v. Roe, 976 F.2d 1216 (9th Cir. 1992), a medical expert testified that the defendant was rendered "virtually a mindless puppet" by his mental problems. Roe, 976 F.2d at 218. Similarly, United States v. Walter, 256 F.3d 891 (9th Cir. 2001), involved an expert psychological evaluation establishing that the defendant's "emotional difficulties influenced his decision to commit [the] crime." Walter, 256 F.3d at 894. The defendant also cites United States v. Rivera, 192 F.3d 81 (9th Cir. 1999), in which the Court declined to grant a defendant a departure for extreme childhood abuse, reasoning that "childhood abuse and neglect are often present in the lives of criminals." Riviera, 192 F.3d at 86.

In the present case, the defendant's alleged medical problems and childhood abuse did not contribute to the commission of the offense. Indeed, Dr. Eliason's report specifically states that it is more likely that the defendant committed the instant crime for reasons unrelated to his childhood abuse or his ambivalent relationship with his mother. See Eliason Report, p. 2. In order to qualify for a departure for diminished capacity, the defendant's reduced capacity must contribute to the commission of the offense. See U.S.S.G. § 5K1.13; United States v. Smith, 330 F.3d at 1209; United States v. Davis, 264 F.3d at 813; United States v. Borrayo, 898 F.2d at 91. As the defendant's conduct was not caused by his childhood experiences or his mental condition, a departure is not appropriate.

SUPPLEMENTAL SENTENCING MEMORANDUM
CR 07-00364 CW                              2

**C.    Ability to Pay Restitution Is Not a Basis to Depart Downward to Facilitate Payment**

During his 18 years of fraud, the defendant converted $132,968.68 to his use. In the plea agreement, the defendant agreed to liquidate his 401(k) account that he represents has a balance of stocks and cash valued at approximately $119,000, and agreed to pay the proceeds, net of taxes and penalties (if any) for early withdrawal. On December 18, 2007, the defendant submitted a cashier's check for $23,000 toward his restitution. On July 3, 2008, the defendant submitted a personal check from Kristi L. Nelson for $28,000 toward the defendant's restitution. Thus, the total amount paid on his behalf to date is $51,000 – less than half of the money that the defendant converted to his use.

In his Sentencing Memorandum, the defendant requests that he be sentenced to probation instead of custody so that he can find a job and work to pay restitution. This would not be an appropriate basis to award a lower sentence. Restitution is not a legitimate ground for awarding a lower sentence. See United States v. Chastin, 84 F.3d 321 (9th Cir. 1996). Reducing a defendant's sentence to preserve a defendant's job or to facilitate restitution would introduce socio-economic disparity into sentencing. See id.

**II.    CONCLUSION**

For the reasons set forth above and in the government's Sentencing Memorandum filed on July 2, 2008, the government respectfully requests that the Court, taking into consideration the Sentencing Guidelines and the sentencing factors set forth in Section 3553(a), sentence Defendant to 15 months imprisonment, 3 years of supervised release, $132,968.68 in restitution, and a $100 special assessment.

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: July 8, 2008                                     /s/
                                                        CHINHAYI J. COLEMAN
                                                        Assistant United States Attorney

SUPPLEMENTAL SENTENCING MEMORANDUM
CR 07-00364 CW                                          3